UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/21/2021

JEFFREY D. PARNASS,

                    Plaintiff,

              -against-

BRITISH AIRWAYS, PLC,

                    Defendant.

1:19-cv-04555 (MKV)

## OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Jeffrey D. Parnass brings this action against Defendant British Airways, PLC ("BA") for injuries he allegedly sustained aboard a flight between London and New York. Parnass seeks to hold BA liable under Article 17 of the Montreal Convention for the Unification of Certain Rules for International Carriage by Air (the "Montreal Convention"), which imposes strict liability on air carriers for passenger injuries caused by "accidents." BA moved for summary judgment on Plaintiff's claims, arguing that there was no "accident" on the flight in question and that Plaintiff has not adequately established causation at this stage. For the reasons that follow, the motion is DENIED.

## BACKGROUND

Beginning in early 2017, Plaintiff experienced pain around his left knee at the distal hamstring tendon. P 56.1 ¶ 24; Def. Supp. 56.1 ¶¶ 52-53.[1] From February through May 2017, Plaintiff underwent physical therapy and other treatments for the pain, to no avail. Pl. 56.1 ¶¶

---

[1] The facts as stated herein are drawn from the parties' Local Rule 56.1 statements. "Def. 56.1: refers to Defendant's Statement of Undisputed Facts, filed at ECF No. 95. "Pl. 56.1" refers to Plaintiff's Local Rule 56.1 Counterstatement of Facts, filed at ECF No. 100-1 in this case. "Def. Supp 56.1" refers to Defendant's Response to Plaintiff's Counterstatement of Material Facts filed at ECF No. 103. Because both Plaintiff's and Defendant's responses to the other's statements restate each paragraph before admitting or denying it, the Court only cites one source here for undisputed statements of fact.

23-30; Def. Supp. 56.1 ¶¶ 52-59. [2]  By the middle of May, Plaintiff's physician "recommend[ed]
an MRI to rule out [a] meniscal tear" in Plaintiff's knee.  Def. Supp. 56.1 ¶ 58.  However, as
noted below, Plaintiff did not undergo that procedure until after the flight at issue in this case.
Related to the knee issues, Plaintiff also suffers from undescribed issues with his gastrocnemius
muscle, which, as the Court understands them, cause pain when Plaintiff's leg is in a certain
position or when objects make contact with the muscle.  Def. Supp. 56.1 ¶¶ 68, 79, 81-82.

Plaintiff's specific claims in this case relate to a BA commercial flight he took on May
29, 2017.  That day, Plaintiff traveled on BA flight 2273 from London Gatwick Airport to John
F. Kennedy International Airport in New York.  Pl. 56.1 ¶ 4.  Sometime earlier Plaintiff had
flown to London without incident.  Pl. 56.1 ¶ 5.  For the return flight, Plaintiff purchased a ticket
in the "World Traveler Plus" cabin of the plane, BA's premium economy cabin.  Pl. 56.1 ¶¶ 6-7.
When he booked his ticket for the flight, Plaintiff informed BA of a recent surgery and of his
inability to keep his leg in a straight position for long periods of time.  Def. Supp. 56.1 ¶ 60.
During Plaintiff's flight, the premium economy section was full to capacity.  Pl. 56.1 ¶ 8.  While
the parties disagree about whether certain other seats were "available," it appears from the record
that there were thirteen unoccupied seats in the Business Class cabin of the plane and ten
unoccupied seats in the Economy cabin.  *See* Def. Supp. 56.1 ¶¶ 73, 84; *see also* Battista Aff. Ex.
E (detailing the "Passenger Load Details" of the flight and reflecting that there were unoccupied

---

[2] In several places, Plaintiff responds to Defendant's statement of material facts by stating that the fact is "not a
material fact," but not admitting or denying it.  *See, e.g.* Pl. 56.1 ¶¶ 23, 25-31, 33-34.  The Local Rules of this
District are clear that a party responding to a motion for summary judgment must "respond[] to each numbered
paragraph in the statement of the moving party" and that "[e]ach numbered paragraph in the statement of material
facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted."  *See* S.D.N.Y.
Local Rule 56.1(b)-(c).  Simply disputing a statement as "not a material fact" is not sufficient to establish a factual
dispute over the issue.  As a result, the Court deems admitted for the purposes of the motion each of the facts
Plaintiff does not specifically deny.

seats in both the Business and Economy cabins).[3]  Apparently, there was no First-Class cabin on the flight in question.  *See* Battista Aff. Ex. E.

At some point during the flight, the footrest for Plaintiff's seat became locked in a "halfway upright position."  Pl 56.1 ¶ 9; Def. Supp 56.1 ¶ 62.  Plaintiff attempted to put his feet on the locked footrest, but it caused him pain to do so.  Def. Supp. 56.1 ¶ 69.  It also caused him pain to place his feet under the locked footrest, in part because only a portion (the parties dispute how much) of his feet could fit there.  Def. Supp. 56.1 ¶ 68.  It took Plaintiff approximately 15-20 minutes to first get the attention of a flight attendant to address the issue.  Def. Supp. 56.1 ¶ 63.  It then took another 30-40 minutes for a senior flight attendant to inform Plaintiff that the footrest was locked in position.  Def. Supp. 56.1 ¶¶ 64-65.

Once Plaintiff had the attention of the senior flight attendant, Plaintiff reiterated that he recently had foot surgery, and stated that he was experiencing pain, related to that surgery, by the locked footrest.  Def. Supp. 56.1 ¶ 71.  Plaintiff sought to be relocated to a seat that had a footrest or which would allow him to recline.  Def. Supp. 56.1 ¶¶ 71-72, 89.  The senior flight attendant advised Plaintiff that she may be able to vacate an occupied seat to accommodate him but did not offer to move him to one of the unoccupied seats.  Pl. 56.1 ¶ 13; Def. Supp. 56.1 ¶ 72.  Eventually, Plaintiff was offered a single seat in the last row of the plane that would not recline and in front of which another passenger was fully reclined.  Def. Supp. 56.1 ¶ 75.  Plaintiff expresses that he will never sit in a seat that cannot recline due to the possibility of a passenger in front of him reclining into his gastrocnemius muscle.  Def. Supp. 56.1 ¶¶ 80-81.  Only after being offered this single seat, Plaintiff inquired about being reseated in the unoccupied seats in

---

[3] As used herein, "Battista Aff." refers to the Affidavit of Anthony U. Battista in Support of the Motion for Summary Judgment, filed at ECF No. 94 and continued at ECF No. 102.

Business Class but was told that the seats were "off limits" and "partially broken, like maybe the TV." Def. Supp. 56.1 ¶¶ 86-88. Plaintiff was not offered any other seat on the plane but would have taken "any seat that reclined." Def. Supp. 56.1 ¶ 89. Instead, Plaintiff remained in his originally assigned seat with the broken footrest and had to twist and alter his position to avoid pain. Def. Supp. 56.1 ¶¶ 66-70, 90.

After Plaintiff's flight landed in New York, and while he still was at the airport, he did not experience any sharp knee pain and did not request any medical assistance in connection with disembarking the plane, going through customs, or collecting his baggage. Pl. 56.1 ¶¶ 16-19. In the days following the flight, Plaintiff emailed BA's customer service department to request a reimbursement and future upgrade for the issues experienced on the May 29 flight. Pl. 56.1 ¶ 20. In his email, Plaintiff did not mention any issues with his left knee or knee pain. Pl. 56.1 ¶ 21. However, within two or three days of the flight, Plaintiff was experiencing sharp pain in his left knee and scheduled an appointment with his physician as a result. Def. Supp. 56.1 ¶¶ 91-92. While Plaintiff certainly had been experiencing pain in his left knee pre-flight and as early as January 2017, *see* Pl. 56.1 ¶¶ 39, 41, the parties dispute the severity of the pain after the May 29 flight.

Plaintiff finally underwent an MRI, as recommended before the flight, on June 11, 2017. Pl. 56.1 ¶ 31. The test revealed a lateral meniscus tear in Plaintiff's left knee. Pl. 56.1 ¶ 32. During a follow-up appointment with his physician on June 23, Plaintiff "denied trauma or other inciting events" for the injury and, specifically, did not mention the BA flight on May 29. Pl. 56.1 ¶¶ 33-34. Plaintiff eventually received a second opinion about the knee pain and underwent surgery to repair what the surgeon described as a "complex tear [of the lateral meniscus] with a large displaced flap component involving approximately 50% of the width of the lateral

4

meniscus." Pl. 56.1 ¶ 44; Def. Supp. 56.1 ¶¶ 96, 102.  Plaintiff submits that the tear was caused

by his needing to move to minimize or avoid pain on the May 29 flight as a result of the broken

footrest.

## LEGAL STANDARD

"Summary judgment is appropriate only when, 'the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law.'" *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 69 (2d Cir. 2015) (quoting Fed. R. Civ.

P. 56(a)).  However, "the mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247–48 (1986).  A fact is material if it "might affect the outcome of the suit under the governing

law." *Id.* at 248.  A material factual dispute is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Id.*  The Court's role here "is not to resolve

disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v.*

*Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

The moving party bears the initial burden of demonstrating that there is no genuine issue

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It may satisfy this burden

"in either of two ways: (1) by submitting evidence that negates an essential element of the non-

moving party's claim, or (2) by demonstrating that the non-moving party's evidence is

insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage,*

*Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted).  If the

moving party satisfies its burden, "the opposing party must come forward with specific evidence

demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654

F.3d 347, 358 (2d Cir. 2011) (citing *Anderson*, 477 U.S. at 249).  The opposing party "'must do

more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); and then quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).  Nevertheless, "if there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party that supports a finding that a material factual dispute exists, summary judgment is improper." *United Rentals (N. Am.), Inc. v. Conti Enters., Inc.*, 293 F. Supp. 3d 447, 451 (S.D.N.Y. 2018) (citing *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)).

## **DISCUSSION**

Defendant seeks summary judgment essentially on two grounds.  First, BA argues that it is not liable for Plaintiff's injuries because the broken footrest and BA's failure to move Plaintiff's seat on the plane are not "accidents" necessary for liability under the Montreal Convention.  *See* Def. Br. at 8-14.[4]  Second, BA argues that Plaintiff has failed to provide evidence that the lateral meniscus tear was caused by the footrest.  *See* Def. Br. at 14-18.  BA also argues, related to the second ground, that even if it is not entitled to final judgment now, it should be wholly or partially exonerated at this stage based on Plaintiff's own negligence and choice to remain in his originally assigned seat.  *See* Def. Br. at 18.

---

[4] The parties briefing is cited herein as follows: "Def. Br." refers to the Memorandum of Law in Support of Defendant's Motion for Summary Judgment, ECF No. 93; "Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion, ECF No. 99; and "Reply" refers to the Reply Memorandum of Law in Further Support of Defendant's Motion, ECF No. 101.

### A. Summary Judgment Is Inappropriate Since There Are Questions Of Material Fact Regarding Whether An Accident Occurred

#### 1. Defendant's Non-Functioning Footrest Could Be An "Accident" Under The Montreal Convention

Defendant suggests that the non-functioning footrest on Plaintiff's originally assigned seat cannot be an "accident" as required for liability under the Montreal Convention. This suggestion is incorrect.

As relevant to this case, the Montreal Convention provides:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Convention for the Unification of Certain Rules for International Carriage by Air art. 17, May 28, 1999, S. Treaty Doc. No. 106–45, 2242 U.N.T.S. 350. [5] In other words, an airline is strictly liable for an injury caused by an "accident" that takes place on board a plane or in connection with boarding or exiting the plane. The Supreme Court has held that an "accident" for the purposes of the Montreal Convention is "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405 (1985). The Court further explained that an accident has not occurred where there is "usual, normal, and expected operation of the aircraft." *Id.* at 406. The Second Circuit has stated that one of the "guiding principles" of the Montreal Convention is "an apportionment of risk to the party best able to control it." *Magan v. Lufthansa German Airlines*, 339 F.3d 158, 162 n.3 (2d Cir. 2003).

---

[5] The Montreal Convention updated and revised a previous treaty, the Warsaw Convention, which had governed liability for international air carriers. *See Lee v. Air Canada*, 228 F. Supp. 3d 302, 306 (S.D.N.Y. 2017). The Montreal Convention "retained a number of provisions that had been present in the Warsaw Convention," including the quoted provision. *Id.* As a result, courts construe this provision "consistently with the precedent developed under the Warsaw Convention and its related instruments." *Id.* (quoting Article-by-Article Analysis of the Montreal Convention for the Unification of Certain Rules for International Carriage by Air Done at Montreal May 28, 1999, reprinted in Transmittal Letter, S. Treaty Doc. No. 106–45) (citing *Baah v. Virgin Atl. Airways Ltd.*, 473 F.Supp.2d 591, 596–97 (S.D.N.Y. 2007)).

Plaintiff has, at a minimum, demonstrated that there is a question of material fact regarding whether the broken, locked, and non-functioning footrest on Defendant's May 29, 2017 flight is an "accident" within the meaning of the Montreal Convention.  Defendant does not dispute that the "usual, normal, and expected" operation of the footrest would not be to lock in place in a "halfway upright position" as occurred here.  Pl 56.1 ¶ 9; Def. Supp 56.1 ¶ 62.  As a general matter, that is sufficient at least to raise a question regarding whether an accident occurred.

The cases to which Defendant points are wholly distinguishable and, at this stage and on this record, do not mandate judgment in BA's favor.  For example, Defendant cites *Plonka v. U.S. Airways*, where the court found that no accident occurred when a passenger hit his leg on an in-flight entertainment box under the seat in front of him.  No. CV 13-7560, 2015 WL 6467917, at *2 (E.D. Pa. Oct. 27, 2015).  In reaching that conclusion, the *Plonka* court specifically noted there that the box in question "was part of the [] Aircraft's approved design and up to eighty-nine other passengers were similarly seated." *Id.*  In other words, the plaintiff in *Plonka* could not point to any part of the aircraft that was nonfunctional or to any part of the airline's policies or practices that the crew did not follow.  This is true for each of the cases Defendant cites in support of its argument on this point.  *See Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 884 (5th Cir. 1996) (no "accident" where plaintiff's injury was caused after passenger seated in front of her reclined his seat); *Zarlin v. Air France*, No. 04-cv-07408, 2007 WL 2585061, at *4 (S.D.N.Y. Sept. 6, 2007) (same); *Louie v. British Airways, Ltd.*, No. A01-0329, 2003 WL 22769110, at *6 (D. Alaska Nov. 17, 2003) (no "accident" where plaintiff argued he was forced not to stand up because of how comfortable the seat was and because the flight crew did not warn him of the dangers of deep-vein thrombosis).

8

In this case, conversely, Plaintiff has pointed to a specific part of the aircraft, *i.e.* the footrest, that allegedly did not function as expected. Thus, he has at least raised a factual question regarding whether an accident occurred. *Magan*, 339 F.3d at 162 ("[I]t is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury." (quoting *Saks*, 470 U.S. at 405)). Perhaps more importantly, finding that the locked footrest could be an accident within the meaning of the Montreal Convention also places the risk of liability on "the party best able to control it," *id.* at 162 n.3, as BA is the only party with the ability to reset the footrest. Indeed, BA reset the footrest seemingly quickly once the flight landed. *See* Pl. 56.1 ¶ 51 ("The Cabin Technical Report shows that a reset of the power by engineers resolved the stuck footrest issues and no further maintenance on the footrest was needed.").

At least two cases support the Court's conclusion here. First, in *Olympic Airways v. Husain*, 540 U.S. 644 (2004), the Supreme Court found that an airline's failure to reseat a severely asthmatic passenger from near the plane's smoking section, in violation of company policy, could be an accident for the purposes of the Montreal Convention. *Id.* at 652-54. The Court rejected the airline's argument that no accident had occurred on the basis that the plaintiff's pre-existing medical condition was the "injury producing event" that caused his eventual death and not the airline's failure to reseat him. *Id.* at 653-54. Instead, the Court examined closely whether an "unexpected" or "unusual" event had occurred and whether that event was a "link in the chain" to the plaintiff's death. *Id.* Plaintiff's claim here alleges a similar unexpected or unusual occurrence—a non-functional footrest—that also arguably led to or exacerbated his injury.

This case also is analogous to *Monaghan v. Aeroflot Russian Airlines*, No. 16-cv-3528-ERK-PK, 2018 WL 3682482 (E.D.N.Y. Aug. 2, 2018). There, the court held that an

9

insufficiently trimmed zip tie under a seat, which sliced into the tendon of an unsuspecting passenger placing his bag under the seat in front of him, could be an "accident" for the purpose of the Montreal Convention. *Id.* at *3. The court emphasized that the plaintiff had presented evidence that the tie was unusual and unexpected, and that the defendant airline had the ability to control it, meriting denial of the defendant's motion for summary judgment. *Id.* Here, too, Plaintiff's claims survive a motion for summary judgment on those grounds. Plaintiff has presented evidence that the footrest for his seat was not functioning in a way that was unexpected or unusual and that the problem was well-within BA's control. That is sufficient to establish that an "accident" could have occurred here and to allow Plaintiff's claim to proceed to trial.

### 2.   *Defendant's Failure to Move Plaintiff's Seat Independently Could Be An "Accident" Under The Montreal Convention*

Defendant also moves to dismiss Plaintiff's claims to the extent they rely on BA's failure to reseat him as an independent accident. *See* Def. Br. at 12-14. Because questions of fact exist with regard to whether the failure was unexpected or unusual under the circumstances, Defendant's motion also is denied on these grounds.

As Plaintiff lays out, upon finding out that the footrest for his seat was not functioning correctly, he contacted flight attendants on the plane and asked to be reseated. Pl. 56.1 ¶ 13. However, rather than offering Plaintiff any of the unoccupied seats in the Business or Economy cabins, the flight attendant offered Plaintiff a single Economy Class seat at the rear of the plane. Def. Supp. 56.1 ¶¶ 73-75, 83-84. Plaintiff already had informed the flight attendant of his medical issues and why reseating was necessary. Def. Sup. 56.1 ¶¶ 77-79, 82. Despite that, Defendant did not provide any reason why any or all of the other unoccupied seats on the flight were unavailable. Def. Supp. 56.1 ¶¶ 86-88. These facts, taken in the light most favorable to

Plaintiff, raise a question of fact regarding whether BA's refusal to reseat Plaintiff in one of the unoccupied seats was an "unexpected" or "unusual" event.

This case is distinguishable from those on which Defendant relies. For example, in *Dogbe v. Delta Airlines, Inc.*, the court held that a failure to reseat a passenger, absent any indication that the airline was aware of the plaintiff's disability or that the plaintiff even had one, was not an accident under the Montreal Convention. 969 F. Supp. 2d 261, 272 (E.D.N.Y. 2013). The *Dogbe* court also noted, relying on federal regulations, that the airline defendant was not obligated to reseat the plaintiff into any of the then-open seats on the flight, as they were "either located in a different class of service than the one plaintiff had purchased, or they were intended for Delta crewmembers only." *Id.* (first citing 14 C.F.R. § 382.87(f); and then citing 14 C.F.R. § 125.211(b)).

Plaintiff's claims here vary in significant degree from *Dogbe*. In this case, the record reflects that Plaintiff disclosed and explained his medical issue to the flight attendant to whom he spoke while trying to get reseated. Def. Sup. 56.1 ¶¶ 77-79, 82. He earlier had disclosed his past surgery and difficulty extending his leg for long periods of time when booking his tickets. Def Supp. 56.1 ¶ 60. In addition, Plaintiff sought not only a reseating into Business Class (for which he admits he did not pay), but "would have taken any seat on the aircraft that reclined." Def. Supp. 56.1 ¶ 89. Defendant does not raise or rely upon the federal regulations the court cited in *Dogbe*.[6] Nor does Defendant provide any other reason (including airline policies or procedures) why all of the other unoccupied seats on the flight, including at least nine others in Economy Class and additional seats in Business Class, *see* Battista Aff. Ex. E, were unavailable to

---

[6] Because BA does not make any argument that its actions here were permitted by any such regulations, the Court does not consider the import of the regulations relied upon in *Dogbe* or any others.

Plaintiff.  These issues distinguish this case from *Dogbe*, and the open questions of material fact preclude determination that an accident did not occur.

Defendant's second case is of no more assistance to its arguments.  In *David v. United Airlines, Inc.*, No. 2:15-cv-02262-ODW (PJWx), 2016 WL 1573423 (C.D. Cal. 2016), the Court held that a standard downgrade before a passenger boarded a flight was not an "accident" because the downgrade specifically was permitted by the airline's terms of carriage.  *Id.* at *7.  It also was not an accident when the airline could not accommodate plaintiff's alleged disability when it was raised for the first time at the gate when boarding the plane.  *Id.*  Here, again, Defendant points to no policy similar to the terms of carriage in *David* that prohibited reseating Plaintiff in any of the unoccupied seats.  Instead, the record simply reflects that Plaintiff was told the unoccupied seats were "unavailable" or "off limits."  Def. Supp. 56.1 ¶¶ 73, 88.

Defendant has failed to provide evidence that its refusal to move Plaintiff into one of the unoccupied seats on the plane was permitted by law or its procedures.  The reasons any seats were unavailable in part determine whether Defendant's failure to reseat Plaintiff was "unexpected" or "unusual," constituting an "accident" under the Montreal Convention.  Thus, Defendant has failed to carry its burden to show that there are no disputed issues of material fact, and the Court cannot enter judgment for Defendant at this stage.

**B.**    ***Questions Of Material Fact With Regard To Causation Preclude Summary Judgment For Defendant***

Defendant also argues that Plaintiff's claims cannot proceed to trial because he has failed to show that the entirety of his knee injury was caused by BA's actions on the May 29 flight.  Def. Br. at 14-17.  This argument fails as a matter of law.

The Montreal Convention requires that a plaintiff show that any injury was proximately caused by the alleged accident on the flight in question.  *See Shah v. Pan Am. World Servs., Inc.*,

148 F.3d 84, 97 (2d Cir. 1998) ("Article 17 requires proximate causation as between the 'accident' and plaintiffs' 'damage'").  Proximate cause is most often a question of fact left to the jury, unless "there are active and efficient intervening causes, or where reasonable [factfinders] could reach only one conclusion regarding the issue of proximate cause." *Margrave v. British Airways*, 643 F. Supp. 510, 513 (S.D.N.Y. 1986).

Here, the only alternative intervening cause Defendant offers is Plaintiff's refusal to move to the single alternative seat offered to him.  *See* Def. Br. at 17-18.  However, the Court already has determined that this issue presents fact questions, since it is unclear why Defendant only offered Plaintiff the single seat.  Moreover, questions of material fact exist regarding Plaintiff's potential injury and pain from sitting in the alternative seat he was offered, based on his fear of injury related to his gastrocnemius.  At a minimum, these questions preclude finding that Defendant is not liable on the basis of intervening facts.

Questions of fact also preclude a finding that a reasonable jury only could reach one conclusion about the injuries in question.  Defendant suggests that Plaintiff's injury entirely predated the May 29 flight.  *See* Def. Br. 15.  If true, this would preclude liability.  However, the parties dispute the extent of the knee pain Plaintiff experienced before and after the flight, and the parties' experts disagree about how Plaintiff's lateral meniscus tear occurred.  *Compare* Def. Br. at 15-16, *with* Opp. at 17.  These disputes give rise to questions of fact that should be left to a jury to decide.

Perhaps aware of these issues, Defendant spends nearly the entirety of its reply brief raising, for the first time, challenges to Plaintiff's expert witness, Dr. Robert Meislin.  *See* Reply at 2-10.  It is well-established that arguments raised for the first time in a movant's reply are waived.  *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 379 n.21 (S.D.N.Y. 2018) ("It is well

established, of course, that arguments first raised in reply briefs are forfeited or waived.").  In

addition, when a party fails to make an objection to evidence that it thinks is inadmissible,

including in connection with summary judgment, the court is free to consider that evidence.  *See*

*Lichter v. Bureau of Accts. Control, Inc.*, No. 19-cv-04476 (ER), 2021 WL 1026175, at *7

(S.D.N.Y. Mar. 17, 2021) (collecting cases); *see also* 10A Charles Alan Wright et al., Federal

Practice & Procedure § 2722 (4th ed. 2020) ("[D]ocuments inadmissible under the evidence rules

may be considered by the court if not challenged.  The objection must be timely or it will be

deemed to have been waived.").

Here, despite knowing that Plaintiff had submitted an expert disclosure that Defendant

considered insufficient, Defendant did not mention its objections to the report until it filed its

reply.  As a result, the Court does consider the report submitted by Plaintiff's expert in

connection with the motion.  The report alone raises questions of material fact related to

causation sufficient to overcome summary judgment; that is, Plaintiff's expert suggests that

Plaintiff's injury was at least related to the events on the May 29 flight, while Defendant

suggests that the injury entirely predated it.  *See, e.g.*, Report of Robert Meislin, M.D. [ECF No.

98-2] ("I conclude that his left knee injury relates to flight of May 29, 2017.").[7]  This disputed

issue of fact must be resolved by a jury.

Because issues of fact related to causation exist, the Court denies Defendant's motion for

summary judgment on this additional ground.  Similarly, Defendant's argument for judgment on

---

[7] Defendant also raises in its reply an objection to the declaration of Plaintiff's expert which was not previously disclosed, and which was raised for the first time in connection with Plaintiff's opposition to Defendant's motion for summary judgment.  *See* Reply at 6-8.  Defendant had no previous opportunity to object to this document and insists that it is broader than the narrative report the expert previously submitted.  *Id.*  Because the Court can determine that questions of fact exist simply on the basis of the narrative report and without considering the declaration, the Court does not consider the declaration for the purposes of this motion, thus mooting the issues identified in Defendant's reply.

the basis that Plaintiff caused his own injury by refusing the single seat that was offered to him,
*see* Def. Br. at 18, also is unavailing, since questions of fact exist at least regarding whether that
seat would have exacerbated Plaintiff's other injuries.

## CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment is DENIED.
Plaintiff has presented evidence sufficient to raise triable issues of fact regarding whether an
"accident" within the meaning of the Montreal Convention occurred and whether any such
accident caused Plaintiff's injuries.  Those disputed issues of material fact preclude summary
judgment.

The Clerk of Court respectfully is requested to close the motion at ECF No. 92.

**SO ORDERED.**

Date:   **September 21, 2021**
        **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**